UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICKIE DIANNE BYRD,

               Plaintiff,

     -vs-

GROVE STREET MANAGEMENT CORPORATION
and BARBARA MANOR LLC,

             Defendants.
_____

**DECISION and ORDER
No. 6:16-cv-6017(MAT)**

## I.   Introduction

Vickie Dianne Byrd ("Plaintiff"), proceeding <u>pro</u> <u>se</u>, instituted this action against Grove Street Management Corporation and Barbara Manor LLC (collectively, "Defendants"),[1] alleging, <u>inter</u> <u>alia</u>, discrimination based on race and disability in violation of the Fair Housing Act, 42 U.S.C. § 3601, <u>et</u> <u>seq.</u> ("the FHA"), and violations of 18 U.S.C. § 1001. Presently before the Court is Defendants' Motion for Judgment on the Pleadings (Docket No. 39) pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)").

---

[1] Defendants indicate in their Answer to the First Amended Complaint (Docket No. 34) that the correct legal name of the entity identified in the caption as "Grove Street Management Corporation" is KTB Capital LLC d/b/a Grove Street Management. In addition, they state that the correct legal name of the entity identified as "Barbara Manor LLC" is Barbara Manor Apartments LLC. The Clerk of Court is directed to amend the caption accordingly. The Court will use the correct legal names of the defendants throughout this Decision and Order.

## II. Factual Background

Plaintiff rented an apartment owned by Barbara Manor Apartments, LLC ("Barbara Manor") in Rochester, New York, with a lease term that expired on October 31, 2015. As the end of the lease term approached, KTB Capital LLC d/b/a Grove Street Management ("Grove Street"), the property manager, notified Plaintiff that her lease would not be renewed and that she would need to vacate the apartment at the conclusion of the lease term. Plaintiff declined to comply with Grove Street's request, and remained in the apartment beyond the expiration of her lease term.

Barbara Manor subsequently initiated an eviction proceeding against Plaintiff on November 10, 2015, in New York State, Monroe County Court. See Barbara Manor Apartments, LLC v. Byrd, No. 2015-12545 (Monroe Cty. Ct. 2015).[2] The Monroe County Court awarded judgment in favor of Barbara Manor on November 24, 2015, and issued a warrant of eviction against Plaintiff.

Plaintiff subsequently filed a "Verified Complaint Article 15 of the Executive Law of the State of New York (Human Rights Law)" (Docket No. 43, ECF p. 12 of 53) with the New York State Department of Human Rights ("NYSDHR"), alleging that she was subjected to discrimination because of her "disability, race/color, opposed discrimination/retaliation, creed, sex, national origin, marital status, age." Plaintiff had received a letter from Defendants dated

---

[2]

The pleadings and judgment from this proceeding are attached as Exhibits A and B (Docket Nos. 39-1 & 39-2) to the Declaration of Amy Hemenway, Esq. (Docket No. 39-1).

September 17, 2015, indicating that her lease would not be renewed. Plaintiff accused Defendants of "retaliating against [her] because [she] filed a case against them last year on December 29, 2014 and [she] won[,]" and that "[t]hey are treating [her] disparagingly and harassing [her] constantly." Plaintiff indicated that she is "a single a Baptist 51 year old African American, female with physical disabilities." Plaintiff accused Defendants with violating "Title VIII of the federal Fair Housing Act (FHA), as amended." Plaintiff submitted a copy of the letter acknowledging receipt of her Verified Complaint but not a copy of the final decision, if any, issued by the NYSDHR.

Plaintiff commenced this action on January 11, 2016, by filing a Complaint (Docket No. 1). She subsequently filed a First Amended Complaint (Docket No. 33), which Defendants answered (Docket No. 34).

## III. Procedural Status

Following limited discovery and an unsuccessful mediation session (Docket No. 30), the parties appeared on March 8, 2018, for a status conference (Docket No. 40), before Magistrate Judge Jonathan W. Feldman. Judge Feldman acknowledged that Defendants had filed the pending motion pursuant to Rule 12(c) rather than Rule 56, but opined that Defendants should have included a "Notice to Pro Se Litigant - Rule 56 Motions for Summary Judgment" with their moving papers. Defendants subsequently served a copy of the Notice on Plaintiff by regular first class mail on March 13, 2018.

Plaintiff filed a Response (Docket No. 42) and a Supplemental Response (Docket No. 43), neither of which were served on Defendants. Defendants filed a Reply (Docket No. 44) on June 1, 2018, in which they assert that it would be premature to treat their Motion for Judgment on the Pleadings as a Motion for Summary Judgment because, <u>inter alia</u>, Plaintiff has asserted new allegations in her Response and the parties have not yet completed discovery. (Docket No. 44 (citing Docket No. 42 at ECF p. 3)). Defendants reiterate that they are asking the Court to rule only on the sufficiency of the pleadings. The Court agrees that the motion, which urges dismissal based on the <u>Rooker-Feldman</u> doctrine[3] and <u>res judicata</u>, can be determined pursuant to the standards applicable under Rule 12(c).

## IV. Rule 12(c) Standard

In deciding a Rule 12(c) motion for judgment on the pleadings, courts "'employ[ ] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6).'" <u>Hayden v. Paterson</u>, 594 F.3d 150, 160 (2d Cir. 2010) (quoting <u>Johnson v. Rowley</u>, 569 F.3d 40, 43 (2d Cir. 2009) (<u>per curiam</u>) (alterations in original; internal quotation marks omitted in original). Thus, accepts all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citation and

---

[3]

The <u>Rooker-Feldman</u> doctrine arises from two decisions issued by the United States Supreme Court: <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>Dist. Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

quotation marks omitted). To survive a Rule 12(c) motion, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id.

For purposes of deciding motions under Rule 12(b)(6), and by extension, Rule 12(c), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)); see also FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting Int'l Audiotext, 62 F.3d at 72).

## V. Discussion

### A. Overview of Plaintiff's Claims

#### 1. The FHA

The FHA prohibits discrimination across a spectrum of housing-related activities, including the provision of brokerage services, real estate transactions, and housing sales and rentals. See

42 U.S.C. §§ 3604-3606. Subject to certain exceptions not applicable here, the FHA makes it "unlawful—

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
> . . .
>
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
> (A) that buyer or renter,
>
> . . .
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of
> —(A) that person . . . ."

42 U.S.C. § 3604 ("Section 3604").

Plaintiff alleges that she wanted to renew her lease and attempted to make the necessary payment, but Defendants declined to either renew her lease agreement or accept her payment, and commenced an ejectment proceeding against her. Plaintiff asserts that Defendants intended to discriminate against her based on her race and disabled status, and also sought to retaliate against her for having successfully rebutted their prior attempt to evict her in 2014. Plaintiff accuses Defendants of failing to make necessary

repairs that she had requested and suggests that this also represents discrimination based on her race and disabled status, as well as retaliation for exercising her rights. As a result of the eviction, Plaintiff personally suffered injuries and sustained injuries to her personal property. Although Plaintiff does not specify the subsection under which her claims fall, they appear to align most closely with subsections (a), (b), and (f).

The Court also construes Plaintiff's First Amended Complaint as attempting to assert a claim under Section 3617 of the FHA. This section provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617 ("Section 3617"). Courts in this Circuit and elsewhere have found that an eviction proceeding can constitute an adverse action under Section 3617. E.g., Reyes v. Fairfield Properties, 661 F. Supp.2d 249, 267 n. 10 (E.D.N.Y. 2009) (on a Rule 12(b)(6) motion to dismiss, "conclud[ing] that an eviction proceeding could constitute an adverse action under [42. U.S.C.] section 3617") (citing Neudecker v. Boisclair Corp., 351 F.3d 361, 364 (8th Cir. 2003) ("Although the retaliatory conduct in this case involved only threats of eviction, which were never carried out, we find [plaintiff] sufficiently alleged an adverse action, at least at

–7–

this early pleading stage.") (further citations omitted)); see also DeSouza v. Park W. Apartments, Inc., No. 3:15-CV-01668(MPS), 2018 WL 2990099, at *11 (D. Conn. June 14, 2018) (plaintiff fulfilled adverse action element of prima facie case based on defendant's "initiation of eviction proceedings in June of 2014, along with its submissions of affidavits of noncompliance in September of 2014 and March of 2015") (citing, inter alia, Wentworth v. Hedson, 493 F. Supp.2d 559, 571 (E.D.N.Y. 2007) (concluding that summary judgment was not warranted on plaintiff's retaliation claim under 42 U.S.C. § 3617 predicated on defendant's initiation of eviction proceedings against her); Bloch v. Frischholz, 587 F.3d 771, 782 (7th Cir. 2009) (concluding that even a threat of eviction can constitute a violation of 42 U.S.C. § 3617)).

## 2. State Law Claims

Because Plaintiff is pro se, the Court has liberally construed her First Amended Complaint as raising claims the under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL") that she presented in her Verified Complaint to the NYSDHR. N.Y. Exec. Law § 296 prohibits housing discrimination, and courts in this Circuit have stated that the standards relevant to NYSHRL claims parallel those applicable under the FHA. Barkley v. Olympia Mortgage Co., No. 04 Civ. 875, 2007 WL 2437810, at *17–18 (E.D.N.Y. Aug. 22, 2007) (citing Lynn v. Vill. of Pomona, 212 F. App'x 38, 40 (2d Cir. 2007) (unpublished opn.) (stating that "the

standards relevant to Lynn's state and local law claims parallel those applicable under the FHA") (citing Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005)); accord Reyes v. Fairfield Properties, 661 F. Supp.2d 249, 269–70 (E.D.N.Y. 2009) (stating that the same standard as the FHA is also applied to retaliation complaints under the NYSHRL).

In addition, the Court notes that Plaintiff alleges that her injuries are traceable to a "lawless \ unlawful eviction" proceeding overseen by a "lawless judge" in "Monroe County Court, which was a lawless venue." First Amended Complaint (Docket No. 33), ECF p. 3. In light of these allegations, the Court construes Plaintiff's pro se First Amended Complaint as raising a state law claim for unlawful eviction under N.Y. Real Prop. Acts. Law § 853.[4] nd N.Y. Real Prop. Acts. § 853.

### 3. Violation of 18 U.S.C. § 1001

Plaintiff accuses Defendants of violating 18 U.S.C. § 1001 by disseminating false information that allegedly harmed her credit rating. Section 1001 makes it a crime for a person, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," to "knowingly and willfully" . . . "falsif[y], conceal[ ], or cover[ ] up by any trick, scheme, or device a material fact; . . . make[ ] any

---

[4] "If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer." N.Y. Real Prop. Acts. Law § 853 (McKinney).

materially false, fictitious, or fraudulent statement or representation; or . . . make[ ] or use[ ] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry. . . ." 18 U.S.C. § 1001(a).

## B. Defendants' Arguments in Support of Dismissal

### 1. Rooker-Feldman Doctrine

Defendants first argue that the Rooker-Feldman doctrine bars this Court's consideration of Plaintiff's claims. This "doctrine precludes district courts from obtaining jurisdiction both over the rare case styled as a direct appeal," Simes v. Huckabee, 354 F.3d 823, 827 (8th Cir. 2004) (citing Rooker, 263 U.S. at 416), "as well as more common claims which are 'inextricably intertwined' with state court decisions." Simes, 354 F.3d at 827 (quoting Feldman, 460 U.S. at 483). In other words, Rooker-Feldman stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 296 (1970).

At one time, courts improperly equated this doctrine with that of res judicata. E.g., Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir. 1996). The Supreme Court has clarified that whereas Rooker-Feldman is jurisdictional in nature, res judicata deals with preclusion. Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 293 (2005) ("Exxon") (stating that "[p]reclusion, of course, is not a jurisdictional matter") (citing

FED. R. CIV. P. 8(c) (listing <u>res</u> <u>judicata</u> as an affirmative defense)). The Supreme Court acknowledged that "<u>Rooker–Feldman</u> does not otherwise override or supplant preclusion doctrine. . . ." <u>Id.</u> In other words, <u>Rooker–Feldman</u> and, for example, <u>res judicata</u>, are not mutually exclusive. <u>See</u> <u>id.</u>

The <u>Rooker–Feldman</u> doctrine is "confined to cases . . . brought by state court losers complaining of *injuries caused by state court judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon</u>, 544 U.S. at 284 (emphasis supplied). The Supreme Court in <u>Exxon</u> explicitly stated, however, that courts may exercise jurisdiction when a "party attempts to litigate[ ] in federal court a matter previously litigated in state court." <u>Id.</u> at 293. For instance, "[i]f a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" <u>Id.</u> (citing <u>GASH Assocs. v. Rosemount</u>, 995 F.2d 726, 728 (7th Cir. 1993) (alteration in original)). Put simply, the <u>Rooker–Feldman</u> doctrine bars a plaintiff from asserting claims that attempt, in one way or another, "to undo [a] [state] judgment in [her] favor." <u>Exxon</u>, 544 U.S. at 294.

From the Supreme Court's precedents, the Second Circuit has distilled four prerequisites for the invocation of <u>Rooker-Feldman</u>.

First, "the federal-court plaintiff must have lost in state court[;]" second, "the plaintiff must complain[ ] of injuries caused by [a] state-court judgment[;]" third, "the plaintiff must invit[e] district court review and rejection of [that] judgment[;]" and fourth, "the state-court judgment must have been rendered before the district court proceedings commenced. . . ." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and quotation and footnote omitted; some brackets in original). The Second Circuit has described the first and fourth of these requirements as procedural, and the second and third requirements as substantive. Id.

The Court proceeds to evaluate whether any of Plaintiff's claims are barred by the Rooker-Feldman doctrine.

### a. The Unlawful Eviction Claim

There is no question Plaintiff lost in the state court proceeding insofar as she was evicted, and Defendants were awarded possession of the apartment as well as various items of money damages against her. Therefore, the first Hoblock factor is met. Cf. Reyes v. Fairfield Properties, 661 F. Supp.2d 249, 273 (E.D.N.Y. 2009) ("[B]ecause [the former tenants] now seek to effectively set aside the judgment authorizing the warrant of eviction, based upon the stipulation of settlement, on the basis that such violated [former tenants'] rights, the [c]ourt deems [them] a losing party in a state court action for purposes of this procedural requirement of Rooker-Feldman.") (citing Green v. City

of N.Y., 438 F. Supp.2d 111, 119 (E.D.N.Y. 2006); other citation omitted).

To evaluate the second requirement, the Second Circuit has devised the following formula: "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88. The Court finds that Plaintiff's injuries were "produced by" the state court judgment evicting her from the apartment and returning possession of it to Defendants. Therefore, the Court finds that the second Hoblock factor has been met. E.g., Reyes, 661 F. Supp.2d at 273 (in their state-law unlawful eviction claim, plaintiffs complained of injuries caused by the state court judgment, namely, their eviction from their apartment unit).

As a result, it is also apparent that third Hoblock factor is fulfilled, because Plaintiff's attack on the allegedly unlawful eviction seeks federal court review and rejection of the state court judgment, which Plaintiff suggests was entered without jurisdiction, on December 2, 2015. E.g., Reyes, 661 F. Supp.2d at 272 (finding that the plaintiffs' unlawful eviction claim invited district court to "'review and reject[ ]' a state court judgment and runs afoul of the jurisdictional limits set by the United States Supreme Court under the Rooker-Feldman doctrine").

With regard to the fourth <u>Hoblock</u> factor, there is no dispute that the state court judgment was rendered prior to the initiation of this action. In an argument somewhat related to this factor, Plaintiff suggests that the Court has authority to consider this action based upon the federal removal statute, 28 U.S.C. § 1441, or the change of venue statute, 28 U.S.C. § 1404(a). (Docket No. 42, ECF p. 9). Plaintiff contends that a transfer of the proceeding "initiated in state courts \ may \ be\ removed to the district court pursuant to 28 U.S.C. § 1441. (Docket No. 42, ECF p. 9). However, as Defendants argue, neither of these statutes are applicable because the state court proceeding already had concluded prior to Plaintiff's commencement of this action.

In sum, because all of the substantive and procedural requirements have been met, the Court finds that the <u>Rooker-Feldman</u> doctrine bars this Court from hearing Plaintiff's unlawful eviction claim.

## b. The FHA and NYSHRL Claims

"Courts have routinely acknowledged <u>Exxon</u>'s guidance that the doctrine occupies a 'narrow ground.'" <u>Peet v. Associated Bank, N.A. Mendota Heights</u>, No. CIV. 11-2544 SRN/JJG, 2012 WL 7589401, at *3 (D. Minn. July 20, 2012) (citing <u>Friends of Lake View Sch. Dist. Inc. No. 35 of Phillips Cnty. v. Beebe</u>, 578 F.3d 753, 758 (8th Cir. 2009)), <u>report and recommendation adopted</u>, No. CIV. 11-2544 SRN/JJG, 2013 WL 717349 (D. Minn. Feb. 27, 2013), <u>aff'd</u>, 556 F. App'x 546 (8th Cir. 2014). As discussed further below, the Court

finds that under the narrow scope of Rooker-Feldman, as clarified by Exxon, it has jurisdiction over certain of Plaintiff's FHA claims. Because NYSHRL claims are adjudged by the same standards applicable to the FHA, see, e.g., Barkley, 2007 WL 2437810, at *17-18, Plaintiff's NYSHRL claims survive to the extent that her FHA claims do.

First, with regard to Defendants' alleged discriminatory denial of maintenance services to her apartment, which the Court has construed as arising under Sections 3604(b) and 3604(f)(2)(A), these claims were not "produced by" the state court proceeding. The alleged injuries were inflicted by Defendants before the state court proceeding. In other words, Defendants' complained-of actions were "simply ratified, acquiesced in, or left unpunished by [the state-court judgment]." Hoblock, 422 F.3d at 88. Therefore, Rooker-Feldman does not apply. See, e.g., Fayyumi v. City of Hickory Hills, 18 F. Supp.2d 909, 916 (N.D. Ill. 1998) (denial of maintenance services under FHA not barred by Rooker-Feldman).

The Court next turns to Plaintiff's claims that Defendants acted with intent to discriminate on the bases of her race and disability in denying her request to renew her lease. The Court has construed these claims as arising under Sections 3604(a), 3604(b), and 3604(f)(1)(A) of the FHA. Relatedly, Plaintiff claims that Defendants denied her request to renew her lease to retaliate against her for a previous, successful assertion of her fair housing rights; the Court construes this claim as arising under

-15-

Section 3617.  Here, the injury about which Plaintiff complains is the denial of the request to renew her lease. While the state court judgment of eviction was a consequence of Defendants' denial of the request to renew her lease, it cannot be said that Defendants' failure to renew the lease was "caused by" the state court judgment of eviction. Rather, Defendants' challenged actions—the refusal to renew the lease—were "simply ratified, acquiesced in, or left unpunished by [the state court judgment]." Hoblock, 422 F.3d at 88. Therefore, the Court finds that these claims are not subject to Rooker-Feldman.

The Court next examines Plaintiff's claims that Defendants commenced the summary eviction proceeding to retaliate against her for exercising her rights, and to discriminate against her. The Court has construed them as arising under Section 3617 and Section 3604(a), respectively. The injuries of which Plaintiff complains—retaliation and discrimination culminating in the filing of a petition to regain possession of the apartment and evict her—occurred prior to the actual judgment of eviction. Therefore, the Court finds that Rooker-Feldman does not apply. See Peet v. Associated Bank, N.A. Mendota Heights, No. CIV. 11-2544 SRN/JJG, 2012 WL 7589401, at *4 (D. Minn. July 20, 2012) ("The injury complained of in this case is the same exact injury that the state court ruled on—retaliation and discrimination resulting in deprivation of services and an attempt to evict. Each and every injury and allegation [the] [p]laintiff complains of predates the

eviction order. Because the injuries predate the order, they could not be 'caused by' the order and, thus, <u>Rooker–Feldman</u> is inapplicable."), <u>report and recommendation adopted</u>, No. CIV. 11-2544 SRN/JJG, 2013 WL 717349 (D. Minn. Feb. 27, 2013), <u>aff'd</u>, 556 F. App'x 546 (8th Cir. 2014).

However, to the extent that Plaintiff seeks damages under Section 3064(a) or Section 3617 for injuries that post-date the state court judgment allowing Defendants to evict her, these claims *are* barred by <u>Rooker–Feldman</u> because the injuries would not have occurred "but for" the eviction order. <u>See</u> <u>Fayyumi</u>, 18 F. Supp.2d at 916-17 (dismissing wrongful eviction claim under Section 3604 of the FHA because the "plaintiffs suffered damage once the state court enabled the defendants to proceed, by allowing the defendants to gain possession of their apartment").

Defendants rely on <u>Babalola v. B.Y. Equities, Inc.</u>, 63 F. App'x 534, 536 (2d Cir. 2003) (unpublished opn.), to argue that Plaintiff's claims are barred because a determination on them involves a review of the state court decision on the validity of the warrant of eviction that was issued. There, the Second Circuit affirmed the district court's decision[5] that the evicted tenant's FHA and civil rights claims were barred by <u>Rooker–Feldman</u> because they were "inextricably intertwined" with prior state court

---

[5] The magistrate judge's report and recommendation is not available on any online legal database such as Westlaw, or on the PACER system. A review of the docket sheet available on the Eastern District of New York's CM/ECF system indicates that the district court summarily affirmed the magistrate judge's report and recommendation without explanation.

determinations regarding the propriety of the eviction warrant initially issued by the New York housing court. The Court finds it significant that Babalola, a non-precedential, unpublished decision, predates Hoblock, in which the Second Circuit which rigorously examined the Rooker-Feldman doctrine and reformulated the applicable standard in light of the Supreme Court's Exxon decision.

Moreover, it is distinguishable because here, certain of Plaintiff's Section 3604 and Section 3617 claims, as discussed in the preceding paragraphs, are not "inextricably intertwined" with the state court judgment. Reyes, 661 F. Supp.2d at 274 n. 16 (plaintiff's breach of contract and duty of fair dealing claims "rely on the factual allegations of discrimination and retaliation based on disability that also support the FHAA and NYSHRL claims;" the claims "do not allege that in seeking to evict plaintiff on the basis of her holdover status, defendants acted illegally; rather, the amended complaint makes clear that such alleged breaches occurred as the result of defendants' alleged discriminatory and retaliatory actions") (distinguishing Babalola, 63 F. App'x at 536).

## 2. **Res Judicata**

The Court next considers Defendants' argument that the doctrine of res judicata bars Plaintiff's FHA and NYSHRL claims.[6]

---

[6] Having found that Plaintiff's unlawful eviction claim under N.Y. Real Prop. Acts. § 853 is barred by Rooker-Feldman, the Court need not consider Defendants' alternative res judicata argument.

See Reyes, 661 F. Supp.2d at 275 ("A court may dismiss a claim on res judicata or collateral estoppel on either a motion to dismiss or a motion for summary judgment.") (citing Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of res judicata); other citations omitted).

"Under the doctrine of res judicata, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised in that action*.'" Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quoting Rivet v. Regions Bank of La., 522 U.S. 470, 476 (1998) (internal quotation marks omitted in original; emphasis in original); other citation omitted). "Res judicata applies to defenses that could have been raised in the prior action as well." Swiatkowski v. Citibank, 745 F. Supp.2d 150, 171 (E.D.N.Y. 2010) (citing Waldman v. Vill. of Kiryas Joel, 39 F. Supp.2d 370, 377 (S.D.N.Y. 1999) ("'[R]es judicata prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.'") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992)), aff'd, 446 F. App'x 360 (2d Cir. 2011); see also Springer v. Lincoln Shore Owners, Inc., No. 03CV4676(FB)(KAM), 2007

WL 2403165, at *3 (E.D.N.Y. Aug. 16, 2007) (<u>res judicata</u> "applies to defenses as well as to causes of action") (citation omitted).[7]

In determining whether the Court must accord the Monroe County Court's judgment preclusive effect, the Court's "analysis is governed by New York State law, which has adopted a transactional analysis of <u>res judicata</u>, 'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted). Where, however, "the initial forum did not have the power to award the full measure of relief sought in the later litigation," <u>res judicata</u> will not apply. <u>Id.</u> (quotation omitted). Thus, where the subsequent claim arises from the "same factual grouping," <u>id.</u>, as the initial action, it is barred by <u>res judicata</u> unless the plaintiff was precluded from recovery in the initial action "by formal jurisdictional or statutory barriers, not by [the] plaintiff's choice." <u>Id.</u>; <u>accord</u>, <u>e.g.</u>, <u>Jacobson v. Fireman's Fund Ins. Co.</u>, No. 95 Civ. 9380(AGS), 1996 WL 204468, at *4 (S.D.N.Y. Apr. 26, 1996), <u>aff'd</u>, 111 F.3d 261 (2d Cir. 1997); <u>Peters v. Timespan Commc'ns, Inc.</u>, No. 97 CIV 8750 (DC), 2000 WL 340900, at *4 (S.D.N.Y. Mar. 30, 2000).

---

[7]
In evaluating the <u>res judicata</u> effect of a prior judgment, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) (citation omitted).

Thus, "[t]o prove establish the affirmative defense [of <u>res judicata</u>], a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." <u>Monahan v. New York City Dep't of Corr.</u>, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted). Examining these prerequisites, there appears to be no doubt that the first two have been met. The evicting proceeding in Monroe County Court involved "the same parties," <u>In re Hunter</u>, 4 N.Y.3d 260, 270 (2005), and resulted in a "judgment on the merits[,]" <u>id.</u> <u>See</u>, <u>e.g.</u>, <u>Springer v. Lincoln Shore Owners, Inc.</u>, No. 03CV4676(FB)(KAM), 2007 WL 2403165, at *3 (E.D.N.Y. Aug. 16, 2007) (defendant-landlord brought summary holdover proceeding in New York City Civil Court against plaintiff-tenant based on repeated violation of excessive noise rule, and Civil Court issued a judgment of possession and warrant of eviction; district court found, for <u>res</u> <u>judicata</u> purposes, "[t]here is no question that the Civil Court proceeding involved the same parties [as federal lawsuit alleging violations of FHA and Americans with Disabilities Act] and resulted in a judgment on the merits in favor of [defendant-landlord]").

The Court also finds that "the first judgment . . . involve[d] the same 'transaction' or connected series of transactions as the earlier suit[,]" <u>Maharaj v. Bankamerica Corp.</u>, 128 F.3d 94, 97 (2d Cir. 1997) (citation omitted), namely, Defendants' failure to renew

her lease and commencement of the summary eviction proceeding. Whether the claims Plaintiff asserts in this action were, or could have been, raised in the prior action, see Monahan, 214 F.3d at 285, presents a somewhat more difficult question. Defendants argue that Plaintiff could have asserted her FHA claims in the state court eviction proceeding brought pursuant to N.Y. Real Prop. Acts. §§ 701-767 ("RPAPL Art. 7"), because she could have raised them as counterclaims or defenses. (See Docket No. 39-4, pp. 12-14 of 17; Docket No. 44, pp. 8-9 of 9). RPAPL Art. 7 and Article VI of the New York State Constitution confer jurisdiction on the county courts to hear summary eviction proceedings. See N.Y. Real Prop. Acts. Law § 701(1) ("A special proceeding to recover real property may be maintained in a county court . . . ."); N.Y. Const. art. VI, § 11(a) ("The county court shall have jurisdiction over the following classes of actions and proceedings[,]" including "summary proceedings to recover possession of real property and to remove tenants therefrom. . ."). Moreover, as Defendants note, a respondent in a summary eviction proceeding before a county court—such as Plaintiff—may file an answer "contain[ing] any legal or equitable defense, or counterclaim any counterclaims or legal or equitable defenses under state or federal law." N.Y. Real Prop. Acts. Law § 743; N.Y. Const. art. VI, § 11(b) ("The county court shall exercise such equity jurisdiction as may be provided by law and its jurisdiction to enter judgment upon a counterclaim for the recovery of money only shall be unlimited."). Courts in this

Circuit and New York state courts consistently have found that tenants may raise claims under the FHA and other federal statutes as affirmative defenses in summary eviction proceedings. See, e.g., Sinisgallo v. Town of Islip Housing Auth., 865 F. Supp.2d 307, 323 (E.D.N.Y. 2012) (explaining that the plaintiffs' "federal disability claims would constitute a 'defense' in the eviction proceeding, because they contend that the [defendant]'s termination of their tenancy without considering a reasonable accommodation for their disabilities violates federal law and therefore is invalid" and "[t]hus, pursuant to RPAPL § 743, where, as here, federal disability claims have been classified as 'defenses' in eviction proceedings, housing courts have jurisdiction to hear them") (citing RCG-UA Glenwood, LLC v. Young, 801 N.Y.S.2d 481, 481-82 (N.Y. App. Term 2005) (affirming Civil Court ruling in favor of plaintiff-tenant dismissing an eviction petition because reasonable accommodation was required under the FHA); Crossroads Apartments Assocs. v. LeBoo, 578 N.Y.S.2d 1004, 1004 (N.Y. City Ct. 1991) (holding that the plaintiff in an eviction proceeding by a private landlord in federally funded section 8 housing could assert claims for violations of the Rehabilitation Act and FHA as affirmative defenses with regard to no-pet policy); Landmark Props. v. Olivo, 783 N.Y.S.2d 745, 747 (N.Y. Sup. App. Term 2004) (affirming ruling of District Court, Nassau County, awarding possession to landlord-defendant where tenant-plaintiff failed to prove his affirmative defense that he was entitled to keep a dog for

therapeutic reasons as a reasonable accommodation pursuant to the Fair Housing Act 42 U.S.C. § 3601, et seq.); Springer, supra; Water's Edge Habitat, Inc. v. Pulipati, 837 F. Supp. 501, 506 (E.D.N.Y. 1993) ("Under New York law, the defendant in an eviction proceeding is entitled to present all legal and equitable defenses he or she has available under State or federal law. . . . Accordingly, respondents have an adequate State remedy to protect their federal rights . . . .") (internal citations omitted); Little Ferry Assoc. v. Diaz, 484 F. Supp. 890, 891 (S.D.N.Y. 1980) (rejecting plaintiff's claim that he could not assert federal rights under 42 U.S.C. § 1983, and 42 U.S.C., § 2000e in summary eviction proceeding under RPAPL Art. 7, in light of § 743; finding that eviction proceeding alleged to be racially motivated may be adequately challenged in landlord-tenant court).

There is authority for the contrary result, however. In Glover v. Jones, 522 F. Supp.2d 496, 505-06 (W.D.N.Y. 2007), Glover, the district court found that a prior action in Rochester City Court of New York State seeking a judgment of eviction and a money judgment for back rent did not have res judicata effect against the plaintiff-tenant's quid pro quo discrimination lawsuit alleging violations of the FHA and NYSHRL by the defendant-property manager. Glover, 522 F. Supp.2d at 505. To support its res judicata holding, the district court quoted at length from Bottini v. Sadore Management Corp., 764 F.2d 116, 121 (2d Cir. 1985), and adopted that reasoning. See Glover, 522 F. Supp.2d at 505-06 (quoting

Bottini, 764 F.2d at 121-22). In Bottini, the appellant had filed charges based on claims of employment discrimination against Sadore Management Corporation, his former employer, before state and federal administrative agencies and an arbitrator. When Bottini later filed a Title VII claim in federal district court, his former employer argued the claim was barred by various adverse judgments against him in the prior state litigation that related to his discharge, including a holdover proceeding initiated by the former employer in the Yonkers City Court to evict him from its apartment, where he lived rent-free so long as he remained an employee. The district court agreed and dismissed the complaint on the grounds of res judicata. See Bottini, 764 F.2d at 118. On appeal, the former employer argued that Bottini's discrimination allegations were adjudicated as part of the holdover proceeding, but, the Second Circuit noted, "nothing in that record indicates the parties submitted any evidence on this issue[,]" id. at 121, and "[t]he City Court's decision focused primarily on the merits of the holdover proceeding[,]" id., and "found merely that Bottini's discharge was lawful, presumably because Bottini had challenged his eviction by claiming that his discharge from employment was unlawful." Id. The Second Circuit found that "[i]nasmuch as the land lord-tenant city court had limited jurisdiction, it was not a competent or appropriate tribunal to hear Bottini's allegations of religious discrimination against his employer." Id. The Second Circuit reasoned that since Bottini "did not have a full and fair

opportunity to litigate his [discrimination] claim in the Yonkers City Court [holdover proceeding], its judgment should not bar him from bringing his Title VII claim in federal court." Id. (citing Allen v. McCurry, 449 U.S. 90, 95 (1980)).

The "full and fair opportunity" language in Allen, on by which the Second Circuit relied in Bottini, is actually contained in the Supreme Court's discussion of collateral estoppel, not res judicata. See Allen, 449 U.S. at 95 (stating that "one general limitation [it] has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case") (citing Montana v. United States, 440 U.S. 147, 153-54 (1979); Blonder-Tongue Laboratories v. Univ. of Illinois Foundation, 402 U.S. 313, 333 (1971)). In Montana, however, the Supreme Court referenced the "full and fair opportunity to litigate" language in a paragraph discussing the "related doctrines" collateral estoppel and res judicata, and the "[a]pplication of both doctrines. . . ." Montana, 440 U.S. at 153. In Kremer v. Chem. Const. Corp., 456 U.S. 461 (1982), the Supreme Court observed that "[w]hile [its] previous expressions of the requirement of a full and fair opportunity to litigate have been in the context of collateral estoppel or issue preclusion, it is clear from what follows that invocation of res judicata or claim preclusion is subject to the same limitation." Id. at 481, n. 22. See also, e.g., EDP Med. Computer Sys., Inc. v.

United States, 480 F.3d 621, 626 (2d Cir. 2007) ("Res judicata does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim.") (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). The Supreme Court in Kremer went on to observe that res judicata commands a federal court to accept the rules chosen by the State from which the judgment is taken." 456 U.S. at 482 (citation omitted). And the New York courts refer to the "full and fair opportunity" limitation in their application of res judicata. E.g., Lanuto v. Constantine, 627 N.Y.S.2d 144, 145 (3d Dep't 1995) ("Res judicata bars litigation of a claim that was either raised or could have been raised in a prior action, provided that the party to be barred had a full and fair opportunity to litigate the claim and the disposition was on the merits[.]") (citing McNeary v. Senecal, 603 N.Y.S.2d 60, 61 (3d Dep't 1993) (in turn citing, inter alia, Smith v. Russell Sage Coll., 54 N.Y.2d 185, 192-93) (1981)).

The "full and fair opportunity" to litigate "exception" to res judicata, which is grounded in Due Process concerns, "arises when there is reason 'to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" Twersky v. Yeshiva Univ., 112 F. Supp.3d 173, 180 (S.D.N.Y. 2015) (quoting Kremer, 456 U.S. at 481 & n. 22 (quoting Montana, 440 U.S. at 164 n. 11), aff'd sub nom. Gutman v. Yeshiva Univ., 637 F. App'x 48 (2d Cir. 2016); see also United States v. Katz, No. 10 CIV. 3335, 2011 WL 2175787,

at *5 (S.D.N.Y. June 2, 2011) ("[B]oth federal and state law mandate that the party against whom res judicata is asserted must have had a 'full and fair opportunity' to litigate its claims in the prior proceeding.") (citing Locurto v. Giuliani, 447 F.3d 159, 170-71 (2d Cir. 2006); Landau v. LaRossa, Mitchell & Ross, 11 N.Y.3d 8, 14 (2008)). As discussed further below, the Court finds that the exception applies here.

At the outset, the Court notes that the "summary proceeding" under N.Y. Real Prop. Acts. Law, Art. 7 that Defendants utilized in this case "is a statutory device designed to achieve simple, expeditious and inexpensive resolution of disputes over the right to possession of real property." Glen 6 Assoc. Inc. v. Dedaj, 770 F. Supp. 225, 226 (S.D.N.Y. 1991). To that end, it is "based on petition, [N.Y. Real Prop. Acts. Law] § 731, and may proceed without formal pleadings, [N.Y. Real Prop. Acts. Law] § 732." Id. at 228. Furthermore, tenants are afforded only five days to appear and answer. See N.Y. Real Prop. Acts. Law § 732(1). "Consistent with the goals of simple, speedy and inexpensive resolution, the rules governing summary proceedings 'contain no provision for discovery.'" United States v. Katz, No. 10 CIV. 3335, 2011 WL 2175787, at *8 (S.D.N.Y. June 2, 2011) (quoting Glen 6 Assoc., 770 F. Supp. at 228). Plaintiff's FHA and NYSHRL claims for disability- and race-based discrimination and retaliation are more aptly characterized as counterclaims rather than defenses to Defendants' summary holdover proceeding and, as such, likely would have been

severed by the County Court. See, e.g., Sinisgallo, 865 F. Supp.2d at 323 (noting that a "party can raise a defense, legal or equitable, state or federal, in a summary proceeding commenced in New York State," but, "[n]evertheless, 'the need for speedy dispositions in landlord-tenant matters ordinarily dictates that counterclaims be severed unless they are in essence a defense to landlord's claim or so intertwined with such a defense as to become part and parcel thereof'") (quoting Committed Cmty. Assocs. v. Croswell, 171 Misc.2d 340, 343 (N.Y. App. Term 2d Dep't 1997), aff'd, 673 N.Y.S.2d 708 (2d Dep't 1998)); see also Smalkowski v. Vernon, No. 80162/00, 2001 WL 914248, at *1 (N.Y. Civ. Ct. Mar. 9, 2001) (tenant's counterclaims are for money damages and attorneys' fees based on landlord's alleged violations of the federal and state prohibitions against race-based and disability-based discrimination; declining to exercise such ancillary or pendent jurisdiction as it may have to adjudicate the counterclaims and severing them without prejudice because they would be "better litigated in a plenary proceeding, where discovery is available as of right").

### 3. Unavailability of a Private Right of Action Under 18 U.S.C. § 1001

Defendants also seek dismissal of any claims Plaintiff brings pursuant to 18 U.S.C. § 1001, which criminalizes the knowing and willful making of materially false or fraudulent statements or representations. see Hubbard v. United States, 514 U.S. 695, 699

(1995) ("Section 1001 criminalizes false statements and similar misconduct occurring 'in any matter within the jurisdiction of any department or agency of the United States.'").

The Supreme Court has explained that "provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages[,]" <u>Cort v. Ash</u>, 422 U.S. 66, 79 (1975), but there must be "at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." <u>Id.</u> (footnote omitted). Here, Section 1001 "is clearly a criminal statute, aimed at fraud and concealment with respect to a government agency, and contains no implication or suggestion of a private right of action." <u>Momot v. Dziarcak</u>, 208 F. Supp.3d 450, 460 (N.D.N.Y. 2016), <u>reconsideration denied</u>, No. 1:14-CV-01527, 2016 WL 10566655 (N.D.N.Y. Dec. 21, 2016). Because Section 1001 presents "nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone[,]" <u>Cort</u>, 422 U.S. at 79–80, the Court concludes that it statute contains no implied right of a civil action. <u>Momot</u>, 208 F. Supp.3d at 460 (citing <u>Federal Sav. & Loan Ins. Co. v. Reeves</u>, 816 F.2d 130, 138 (4th Cir. 1987); <u>Johl v. Johl</u>, 556 F. Supp. 5, 7 (D. Conn. 1981) ("It is clear that [Section 1001] cannot serve to provide the plaintiff, a private citizen, with a cause of action in this civil case."); <u>Anderson v. Wiggins</u>, 460 F. Supp.2d 1, 8 (Dist. D.C. 2006) (same); <u>Gause v. Rensselaer Children & Family Servs.</u>,No. 10-CV-0482, 2010 WL 4923266, at *1

(N.D.N.Y. Nov. 29, 2010). Accordingly, any claims under 18 U.S.C. § 1001 must be dismissed.

## VI.  Conclusion

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is granted in part and denied in part, as follows: the unlawful eviction claim under N.Y. Real Prop. Acts. Law § 853 is dismissed with prejudice; any claims seeking damages under FHA Section 3604(a) or Section 3617 for injuries that post-date the state court judgment allowing Defendants to evict her are dismissed with prejudice; the remaining claims under FHA Section 3604(a) and Section 3671 are not barred by Rooker-Feldman or res judicata and survive Defendants' motion for judgment on the pleadings; the claims under NYSHRL survive to the extent that the FHA claims do; and any claims under 18 U.S.C. § 1001 are dismissed with prejudice.

The matters is referred again to Magistrate Judge Feldman for completion of discovery and pre-trial proceedings.

**SO ORDERED.**

S/Michael A. Telesca
_____
    HON. MICHAEL A. TELESCA
United States District Judge

DATED:    June 25, 2018
          Rochester, New York