UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――

VICKIE DIANNE BYRD,

          Plaintiff,

   -vs-

KTB CAPITAL LLC, d/b/a GROVE STREET
MANAGEMENT CORPORATION and BARBARA
MANOR APARTMENTS LLC,

          Defendants.

―――――――――――――――――――――――

**DECISION and ORDER**
**No. 6:16-cv-06017(MAT)**

## I.  Introduction

On January 11, 2016, Vickie Dianne Byrd ("Plaintiff"),
proceeding pro se, instituted this action against KTB Capital LLC,
d/b/a Grove Street Management Corporation ("Grove Street") and
Barbara Manor Apartments LLC ("Barbara Manor") (collectively,
"Defendants"),[1] alleging, inter alia, discrimination based on race
and disability in violation of the Fair Housing Act, 42 U.S.C. §
3601, et seq. ("FHA") and the New York State Human Rights Law, N.Y.
Exec. Law § 290 et seq. ("NYSHRL"). Presently before the Court is
Defendants' Motion for Summary Judgment (Docket No. 60) pursuant to
Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").

―――――――――――――――――

[1]
    Defendants indicate in their Answer to the First Amended Complaint (Docket
No. 34) that the correct legal name of the entity identified by Plaintiff in the
caption as "Grove Street Management Corporation" is KTB Capital LLC d/b/a Grove
Street Management. In addition, they state that the correct legal name of the
entity identified as "Barbara Manor LLC" is Barbara Manor Apartments LLC. The
Clerk of Court has been directed to amend the caption accordingly.

## II.  Factual Background

The following factual summary is based on Defendants' detailed and well-supported Statement of Material Facts ("Defs' SOF") (Docket No. 60-2), along with Defendants' Appendix of Exhibits to Local Rule 56 Statement of Facts ("Defs' App.") (Docket No. 60-3 through Docket No. 60-24).

Grove Street is a real estate asset management company that, during the relevant period, acted as the rental agent and property manager for apartments located at Emerson Street and Mount Read Boulevard in the City of Rochester, New York. These apartments were owned by defendant Barbara Manor. Plaintiff entered into a lease agreement with Grove Street to rent the unit located at 1403 Emerson Street, Apartment C. The initial lease term commenced November 30, 2012, and was set to terminate on November 30, 2013. The monthly rental fee was $545 per month, which included water, heat, and trash removal.

In the fall of 2013, Grove Street proposed renewing Plaintiff's lease at the rate of $555 per month, for a one-year term starting November 1, 2013. Plaintiff refused the $10-increase and requested that her rent remain the same. Grove Street acquiesced, and Plaintiff signed a new lease on September 23, 2013, with her rent payment continuing at $545 per month.

About a year later, on September 9, 2014, Grove Street proposed renewing Plaintiff's lease at a rate of $565 per month for

a one-year term. This was below the market rate for her apartment unit, which was $575.00. Plaintiff refused, saying she could not afford the $20-increase and requesting that she be allowed to keep her current rate of $545.00. Grove Street requested that Plaintiff either sign the lease renewal and accept the $565-per-month rate, or provide a notice to vacate in accordance with Section C.5[2] of the lease agreement.

Plaintiff neither signed the lease agreement nor provided a notice to vacate. Plaintiff did not submit her rental payment until October 6, 2014, five days after it was due on October 1, 2014. Because it was late, Grove Street imposed a $25-late-fee, in accordance with Section B.1[3] of the lease agreement. However, on October 10, 2014, Grove Street waived the late-fee as a one-time courtesy and asked her to come into the office to sign the lease renewal paperwork.

When Plaintiff did not respond, Grove Street sent another letter on October 14th, reminding Plaintiff that her November rent

---

[2]

Section C.5 provides as follows: "In the event you do not vacate the Apartment at the end of the term, we may use legal process to remove you. Or, if we accept rent for any period after the end of the Lease term, then you shall be deemed a holdover Resident and your tenancy shall be month-to-month, with monthly rent at the current market rate plus an additional monthly fee of Fifty Dollars ($50.00). Either you are [sic] we can terminate the month-to-month lease as of the last day of any calendar month by giving at least one calendar month's written notice to the other party." Defs' SOF ¶ 4 (citations omitted).

[3]

As pertinent here, Section B.1 provides as follows: "If you pay the monthly rent installment after the end of the 5th day of the month, but before the end of the 10th day of the month, you will be obligated to pay as additional rent a Late Fee in the amount of Twenty Five Dollars ($25.00). . . ." Defs' SOF ¶ 4 (citations omitted).

would increase to $565 per month plus an additional $50 per month because she did not have a current lease. The letter also notified Plaintiff that her lease would terminate on November 30, 2014, unless she responded.

On October 21, 2014, Grove Street sent a letter reiterating that Plaintiff's rent would increase as of November 1, 2014, and that she needed to vacate her apartment by November 30, 2014. Grove Street sent another reminder letter dated October 30, 2014, regarding Plaintiff's need to quit the premises by November 30th.

November 30, 2014, came and went, and Plaintiff remained in her apartment.

On December 4, 2014, Grove Street commenced an eviction proceeding in Rochester City Court. The parties appeared in court for a hearing on December 23, 2014. Plaintiff stated she was willing to pay the increased rental fee of $565 per month and had only proceeded to the eviction proceeding because she "want[s] [Defendants] to be responsible for making repairs." Defs' SOF ¶ 21 (quotation and citation omitted). She said, "I don't have a problem paying what they're asking. . . . I just need to have somebody to vent—to hear me. I wanted Your Honor to hear my complaints." Id. (quotation and citation omitted). Plaintiff did not make allegations of discrimination during the eviction proceeding. Id. (citing Defs' Ex. M (Docket No. 60-16)). The City Court judge was able to assist the parties in reaching a resolution of the eviction

-4-

proceeding whereby Plaintiff's lease was extended, from January 1, 2015, to October 31, 2015, at the rate of $565 per month. Id. ¶¶ 23-24 (citations omitted).

On September 17, 2015, Grove Street sent Plaintiff a letter informing her that it would not be renewing her lease and that she was required to vacate her apartment by October 31, 2015. Id. ¶ 25 (citations omitted).

October 31, 2015, passed without Plaintiff vacating her rental unit.

On November 5, 2015, Plaintiff visited Grove Street's office and requested that it accept her November rent payment in the amount of $565. Tamra James ("James"), Senior Vice President of Grove Street, advised Plaintiff that Grove Street would not accept the rent because a notice of non-renewal had already been sent to her, and because her lease had terminated as of October 31, 2015. Defs' SOF ¶ 30-31. Because Plaintiff had not vacated her apartment, Grove Street considered her to be a holdover tenant, subject to eviction under Section C.5, see n. 2, supra, of the rental agreement. Defs' SOF ¶ 31.

Grove Street commenced an eviction proceeding on November 10, 2015, in Monroe County Court. At a hearing on November 24, 2015, the County Court judge issued a judgment and warrant of eviction for holdover, ordering Plaintiff to vacate her apartment by December 3, 2015. Plaintiff complied with this order.

## III. Procedural Status

On June 25, 2018, the Court issued a Decision and Order (Docket No. 47) disposing of Defendants' Motion for Judgment on the Pleadings as follows: the unlawful eviction claim under N.Y. Real Prop. Acts. Law § 853 was dismissed with prejudice; any claims seeking damages under FHA Section 3604(a) or Section 3617 for injuries that post-dated the state court judgment allowing Defendants to evict her were dismissed with prejudice; the remaining claims under FHA Section 3604(a) and Section 3671 were allowed to proceed because they were not barred by the Rooker-Feldman doctrine or res judicata; the claims under NYSHRL survived to the extent that the FHA claims did; and any claims under 18 U.S.C. § 1001 were dismissed with prejudice.

The matter was referred again to Magistrate Judge Jonathan W. Feldman for completion of discovery. On August 31, 2018, Judge Feldman ordered that all motions for summary judgment were due by November 8, 2018. Docket No. 58.

On November 8, 2018, Defendants filed their Motion for Summary Judgment (Docket No. 60). Plaintiff filed a Declaration (Docket No. 62) and her own Motion for Summary Judgment (Docket Nos. 63 & 64). Defendants filed their Reply/Response (Docket No. 67) on January 7, 2019. Plaintiff filed a Response (Docket No. 68), Declaration (Docket No. 69), and Continuation of Exhibits (Docket No. 71). The summary judgment motion was submitted without oral argument on

January 24, 2019. Docket No. 72.

## IV.  Rule 56 Standard

Rule 56(c) states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. When considering a motion for summary judgment, the court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252 (emphasis supplied). To defeat summary judgment, therefore, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and she "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp.,

247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). At the summary judgment stage, the nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998); accord Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (holding that district court did not err in granting defendants' motion for summary judgment on the basis that the plaintiff's "testimony—which was largely unsubstantiated by any other direct evidence—was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint") (quotation omitted).

## V.    Plaintiff's Summary Judgment Motion

### A.    Plaintiff's Motion Is Untimely

Pursuant to Magistrate Judge Feldman's Order dated August 31, 2018 (Docket No. 58), dispositive motions were due by November 8, 2018. However, Plaintiff filed her motion for summary judgment on December 6, 2018, nearly a month late. As Defendants point out, Plaintiff  presented no reason for her tardy filing; nor did she seek a modification of the scheduling order or an extension of time in which to file her motion. Accordingly, the Court finds that dismissal of her motion as untimely is warranted. See, e.g., Bailey-Lynch v. Prot. One Alarm Monitoring, Inc., No. 02-CV-0615E(SC), 2005 WL 1334870, at *3 (W.D.N.Y. June 6, 2005)

(finding pro se plaintiff's motion untimely where all dispositive motions had to be filed by January 10, 2005, pursuant to scheduling order, and plaintiff's motion was filed on January 12, 2005); NAS Elecs., Inc. v. Transtech Elecs. Pte Ltd., 262 F. Supp.2d 134, 150 (S.D.N.Y. 2003) (holding that, where the plaintiff's motion for summary judgment was filed a month late, "[t]he failure to abide by the [c]ourt's scheduling order without any showing of good cause is sufficient grounds to deny the . . . motion").

**B. Plaintiff's Motion Improperly Attempts to Amend Her Complaint**

Even if the Court were to find Plaintiff's motion timely, it improperly raises new claims not presented in any previous filing. As Defendants point out, the claims to be adjudicated in this case were clarified by the Court in its Decision and Order dated August 31, 2018. Specifically, the claims under FHA Sections 3604(a) and 3617 and the NYSHRL claims survived, while the remainder of Plaintiff's claims were dismissed with prejudice. In her motion papers, however, Plaintiff refers to new statutory provisions such as 42 U.S.C. § 3631, a provision of the FHA relating to criminal violations and penalties; 42 U.S.C. § 3614, a provision of the FHA dealing with enforcement actions by the United States Attorney General; and New York Real Property Law § 235-B, the warranty of habitability provision.

It is clearly improper for a litigant to assert new claims for the first time at the summary judgment stage. E.g., Sec. & Exch.

Comm'n v. Yorkville Advisors, LLC, 305 F. Supp.3d 486, 531 (S.D.N.Y. 2018) (holding that plaintiff "cannot now amend their complaint merely by raising new facts or theories in their briefs") (citing Alali v. DeBara, No. 07 Civ. 2916(CS), 2008 WL 4700431, at *3 n.6 (S.D.N.Y. Oct. 24, 2008) (refusing to "consider these [new] allegations in deciding this motion because it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment"); Kearney v. Cty. of Rockland, 373 F. Supp.2d 434, 440-41 (S.D.N.Y 2005) (plaintiff alleged, in opposition brief to summary judgment motion, a Title VII hostile work environment claim for the first time; district court refused to consider Title VII claim because nothing in complaint or EEOC charge put defendants on notice of the new allegation). To the extent Plaintiff purports to assert any new claims, the Court shall not consider them.

### C. Plaintiff's Motion Is Procedurally Deficient

When confronted with a properly supported motion for summary judgment, Rule 56 requires the non-movant to produce evidence in admissible form. Fed. R. Civ. P. 56(c). Local Rule of Civil Procedure for the Western District of New York ("W.D.N.Y. L.R.") 56 further provides that

> [t]he papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists

a genuine issue to be tried. Each numbered paragraph in
the moving party's statement of material facts may be
deemed admitted for purposes of the motion unless it is
specifically controverted by a correspondingly numbered
paragraph in the opposing statement.

W.D.N.Y. L.R. 56(a)(2).

Plaintiff submitted a pleading captioned "Re: Buttal Statement
of <u>Pro Se</u> Facts" (Docket No. 64-2) that purports to be a statement
of facts for purposes of W.D.N.Y. L.R. 56(a)(2). However, as
Defendants observe, Plaintiff failed to address nearly all of
Defendants' factual averments, which were supported by evidence in
admissible form. Rather, Plaintiff specifically addressed only
three of the 56 paragraphs in Defendants' Statement of Material
Facts, and then only with conclusory or self-serving allegations.

As Plaintiff is a frequent litigator in this Court, she
presumably has been made aware of how to oppose a summary judgment
motion, including the requirement that the non-movant must
specifically respond to the moving party's statement of facts.
Indeed, in one of Plaintiff's other cases, this Court recently held
that the defendants' statement of facts "must be deemed admitted"
because Plaintiff failed to comply with W.D.N.Y. L.R. 56's
requirements. <u>Byrd v. NYS Fingerlakes Developmental Disabilities
Servs. O.P.W.D.D.</u>, No. 6:14-CV-06470 (MAT), 2018 WL 6119777, at *3
(W.D.N.Y. Nov. 22, 2018).

Because Plaintiff failed to specifically respond to or
otherwise address Defendants' Statement of Material Facts, she has

admitted any uncontested facts as true. See id.; see also, e.g., Hamilton v. Robinson, No. 6:12-cv-06449(MAT), 2018 WL 4334769, at *2 (W.D.N.Y. Sep. 11, 2018) (holding that to the extent the pro se "failed to offer a declarative statement of fact in a correspondingly numbered paragraph in opposition to each factual averment in [the defendant]'s Statement of Material Facts Not in Dispute," "such factual averments [were deemed] admitted"); Davis v. Castleberry, 364 F. Supp.2d 319, 322 (W.D.N.Y. 2005) (same).

## VI. Defendants' Summary Judgment Motion

### A. Plaintiff's FHA Claims Fail as a Matter of Law

#### 1. The FHA and the Three-Step Burden-Shifting Framework

The FHA provides that "it shall be unlawful . . . to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race[,]" 42 U.S.C. § 3604(b), or handicap. Id. § 3604(f). "An FHA violation may be established on a theory of disparate impact or one of disparate treatment." LeBlanc–Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995). Plaintiff's claims in this action are based on a theory of disparate treatment.

Housing discrimination claims are evaluated under the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). E.g., Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (citing

Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1038 (2d Cir. 1979)). The elements of a prima facie case of housing discrimination are as follows: (1) the plaintiff is a member of a protected class; (2) the plaintiff sought and was qualified to rent or purchase the housing; (3) the defendant denied the plaintiff the opportunity to rent or purchase the housing; and (4) the housing opportunity remained available to other renters or purchasers. Mitchell, 350 F.3d at 47. "[O]nce a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." Mitchell, 350 F.3d at 47 (citing McDonnell Douglas Corp., 411 U.S. at 802–03).

"If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." Id. (citing Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)). Importantly, "although the McDonnell Douglas presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); emphasis and brackets in original).

## 2.   The Failure-to-Renew-Lease Claim Fails

Plaintiff alleges that she wanted to renew her lease and attempted to make the necessary payment, but Defendants declined to either renew her lease agreement or accept her payment and then commenced an ejectment proceeding against her. Plaintiff asserts that Defendants intended to discriminate against her based on her race and disabled status.

The Courts assumes _arguendo_ that Plaintiff has made out a _prima facie_ case; she alleges that she is African-American and suffers from mental and physical disabilities; she appears to have been qualified to rent the unit in question insofar as she did so for several years; Grove Street declined to renew her lease; and the unit she had inhabited remained available to rent. _See_, _e.g._, _Frazier v. Rominger_, 27 F.3d 828, 831 (2d Cir. 1994) ("There is no dispute that the plaintiffs established a _prima facie_ case at trial, namely, that [the plaintiff] is African-American, that the couple was qualified for the housing, that the couple did not get the housing, and finally that the housing remained open.") (citing 42 U.S.C. § 3604(a); other citation omitted).

Defendants have fulfilled their burden of production by coming forward with ample evidence demonstrating that they had legitimate, non-discriminatory reasons for declining to renew her lease. Grove Street has submitted declarations from its Senior Vice President Tamra James ("James") and former Assistant Property Manager Briana Mendez ("Mendez") detailing Plaintiff's lack of cooperation during

each lease-renewal process, obdurate refusal to pay modest rent
increases; bellicose and abusive behavior towards staff, which
escalated in the period between the first eviction proceeding and
September 2015; and disruption of other tenants' enjoyment of their
apartments. See Declaration of Tamra James ("James Decl.") (Docket
No. 60-25) ¶¶ 27-30; Declaration of Briana Mendez ("Mendez Decl.")
(Docket No. 60-26) ¶¶ 6-20. For instance, Mendez recounts that
because Plaintiff paid her rent in cash, she made in-person visits
to Grove Street's offices to remit her rent payment. Mendez Decl.
¶ 7. Mendez recalls that Plaintiff "[o]ften . . . would make
extreme scenes in the office," engage in "belligerent behavior" and
declare that "Grove Street was 'against' her." Id. Mendez explains
that "[i]t was impossible to have a conversation with [Plaintiff]
during these in-person interactions because she refused to listen
to any of the office workers. . . ." Id. On one visit, Plaintiff
started yelling and waving her cane at the employees in the office,
almost hitting Mendez in the head. Id. ¶ 8.

James corroborates Mendez's observations about Plaintiff's
belligerent and unreasonable behavior. See James Decl. ¶¶ 28-29.
James recalls that on April 6, 2015, when Plaintiff came to the
office to pay a late fee, she became "verbally abusive, [started]
swearing, and disrupted the whole office." Id. ¶ 28. In addition,
Plaintiff raised her cane to eye level, which James personally
perceived as threatening. Id. James explains that during 2015, the

tenant who occupied the unit below Plaintiff's apartment complained to her and other staff members that Plaintiff "was loud and yelled in her apartment, to a point where it disrupted his enjoyment of his own unit." James Decl. ¶ 30. When it came time for this tenant to renew his lease at the end of 2015, James states, he "conditioned his renewal on [Plaintiff]'s eviction (which was then pending)." Id. & Defs' Ex. U (Docket No. 60-24) (note from tenant).

Plaintiff has not fulfilled her burden of persuading the Court that Defendants' reasons are false or in any way pretextual. At this stage in the McDonnell-Douglas framework, the litigant "may satisfy [her] ultimate burden "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant]'s proffered explanation is unworthy of credence." Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (citing Burdine, 450 U.S. at 256). In order to defeat a well-supported summary judgment motion, "conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)." Id. at 998 (citing Zahorik v. Cornell Univ., 729 F.2d 85, 94 (2d Cir. 1984); Mason v. Continental Illinois Nat. Bank, 704 F.2d 361, 366 (7th Cir. 1983); other citations omitted).

In opposition to Defendants' motion, Plaintiff offers only her personal belief that Defendants were "out to get her" and that they discriminated and retaliated against her in essentially every

interaction she had with them. These conclusory and unsupported assertions are belied by Grove Street's repeated efforts to accommodate her demands. For instance, in the fall of 2013, when Plaintiff refused a $10-per-month rent increase and said she wanted to continue to rent the apartment at the same rate ($545 per month), Grove Street agreed. See Defs' SOF ¶¶ 5-6 & Defs' Ex. E (Docket No. 60-8). The following year, when Grove Street proposed to renew her lease at $565 per month, Plaintiff again refused. While Grove Street did not acquiesce this time in Plaintiff's demand to maintain her rent at $545 per month, the Court notes that the proposed rent of $565 was still below the fair market value of Plaintiff's unit, $575 per month. See Defs' SOF ¶¶ 7, 9 & Defs' Ex. H (Docket No. 60-11). And, Grove Street attempted to negotiate with Plaintiff over the next month to arrive at mutually agreeable lease terms, but those efforts were unsuccessful. During the ensuing eviction proceeding, Plaintiff admitted in open court that she actually did not object to the proposed rental increase; she just wanted to have the chance to "vent" to the judge. Although Grove Street certainly was legally entitled to a judgment and warrant of eviction at that time, it nevertheless agreed to allow Plaintiff to rent her apartment for another year.

Where, as here, the plaintiff "has failed to show that there is evidence that would permit a rational factfinder to infer that the [defendant]'s proffered rationale is pretext, summary judgment

dismissing the claim is appropriate[.]" Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (citing Smith v. American Express Co., 853 F.2d 151, 154-55 (2d Cir. 1988) (affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext)); see also Waldo v. New York City Health & Hosps. Corp., No. 06CV2614(SLT)(LB), 2009 WL 2777003, at *5 (E.D.N.Y. Aug. 31, 2009) (discrimination plaintiff's unsupported assertion that the "motive" behind his placement on medical leave was not "intended for safety reason[s]" but rather to "hurt the plaintiff" and to "terminate [him] permanently" were "conclusory allegations" that could not defeat the defendants' summary judgment motion) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (dismissing discrimination claim where employer showed valid, unrefuted reasons for plaintiff's termination and plaintiff offered nothing but conclusory allegations regarding defendant's actions); other citations omitted).

### 3. The Failure-to-Repair Claim Fails

Plaintiff also accuses Defendants of failing to make necessary repairs that she had requested. She argues that this represents discrimination based on her race and disabled status. As noted above, the FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of . . . rental of

a dwelling, or in the provisions of services or facilities in connection therewith, because of race," 42 U.S.C. § 3604(b), or "because of a handicap," 42 U.S.C. § 3604(f)(2)(A). Title 42 U.S.C., § 3604(b) and (f) prohibit, <u>inter alia</u>, "[f]ailing or delaying maintenance or repairs of sale or rental dwellings" on the basis of race or handicap. 24 C.F.R. § 100.65(b)(2).

As an initial matter, the Court notes that Defendants have submitted detailed documentation regarding all of the service and repair requests by Plaintiff that they have in their records, as well as the timing and substance of their responses to those requests. <u>See</u> Defs' SOF ¶ 41 (citing James Decl. ¶¶ 43-45 & Defs' Ex. R (Docket No. 60-21)). Defendants point out that Plaintiff admitted, at her deposition, that maintenance personnel came and fixed her refrigerator, windows and window screens, bathroom sink, hall lights, and garbage disposal. <u>See</u> <u>id.</u> ¶ 43 (citing Excerpts from Deposition of Vickie D. Byrd ("Byrd Dep.") (Docket No. 60-6) at 16-18, 19, 21, 22, 26).

The only repairs and improvements that Plaintiff asserts were not made are (1) repairs to her kitchen cabinets; and (2) installation of a peephole in her front door. Defendants admit that these repairs were not made. The Court therefore will assume <u>arguendo</u> that Plaintiff has made out a <u>prima</u> <u>facie</u> case under FHA Section 3604(b) and (f) regarding these two items.

With regard to both the kitchen cabinets and the peephole,

-19-

Defendants have offered a legitimate, nondiscriminatory reason for not putting in a service call—namely, that they never received a request from Plaintiff to make such repairs. <u>See</u> Defs' SOF ¶ 44 (citing James Decl. ¶ 46). Plaintiff has not met her burden by showing that this was merely a pretext and that the real reason for not fixing her cabinets and installing the peephole was discriminatory. Significantly, when questioned at her deposition as to why she believed Defendants ignored her repair requests, Plaintiff testified that she had "'no idea.'" Defs' SOF ¶ 46 (quoting Byrd Dep. at 28 (Q: Why do you think Grove Street and Barbara Manor ignored your requests? A: I have no idea. I have no idea.")); <u>see also</u> <u>id.</u> (quoting Byrd Dep. at 30 (Q: I asked you why you thought they ignored your request, and your answer was you have no idea; correct? A: Well, I want to say they ignored my request because–I have no idea. Maybe they wanted me to do them myself.")). Plaintiff thus concedes that she has no direct or circumstantial evidence of any discriminatory animus on Defendants' part in connection with their alleged failure to make repairs to Plaintiff's apartment.

### 4. The Retaliation Claim Fails

Plaintiff asserts that Grove Street, in commencing the second eviction proceeding against her, sought to retaliate against her for having filed a discrimination complaint with the NYSDHR and "winning" the first eviction proceeding.

Section 3617 of the FHA prohibits retaliation for exercising rights under the FHA. <u>See</u> 42 U.S.C. § 3617 (making it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [, <u>inter alia</u>, 42 U.S.C. §§ 3604, 3605, and 3606]"). To state a claim for retaliation under the FHA, a plaintiff must allege that (1) she was engaged in protected activity, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. <u>Regional Economic Community Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 54 (2d Cir. 2002). "Protected activity under the FHA refers to 'action taken to protest or oppose statutorily prohibited discrimination.'" <u>Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II</u>, 457 F. Supp.2d 126, 131 (E.D.N.Y. 2006) (quoting <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000)).

Assuming <u>arguendo</u> that Plaintiff has established the first three elements of a <u>prima facie</u> case of retaliation under the FHA in connection with her filing of the NYSDHR complaint, she cannot make out the fourth element—that is, the requisite "causal connection" between the protected activity (the filing of a

discrimination complaint with the NYSDHR) and the adverse action (the eviction proceeding in Monroe County Court). It is true that, "[i]n this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was <u>closely followed in time</u> by the adverse [employment] action.'" <u>Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.</u>, 252 F.3d 545, 554 (2d Cir. 2001) (quoting <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir.1996) (citation and quotation marks omitted in original; alteration in original; emphasis supplied)). Here, however, the adverse action <u>preceded</u> the protected activity. Therefore, Plaintiff cannot demonstrate a causal connection between the two events.

With regard to her claim that Defendants retaliated against her after she "won" the 2014 eviction proceeding, Defendants point out that Plaintiff did not "win" anything insofar as the City Court judge made no findings in her favor. Rather, with the judge's assistance, the parties reached a settlement whereby Plaintiff agreed to the rent increase originally proposed by Grove Street, and Grove Street agreed to extend her lease for a period of time. Even disregarding this fact, Plaintiff has failed to make out a <u>prima facie</u> retaliation claim because her opposition to Grove Street's eviction petition in December 2014, does not qualify as protected activity. The Court has reviewed transcript of the

proceeding in City Court, which reveals that Plaintiff never asserted discrimination under the FHA or NYSHRL. See Defs' Ex. M (Docket No. 60-16). Rather, Plaintiff informed the judge that she refused to pay the requested rent increase—even though "[m]oney was never an issue," id. at 15—and proceeded to court simply because she wanted someone to "vent" to. Id. at 11.

Without complaints about actions prohibited by the FHA, there is no protected activity. Fincher v. S. Bend Hous. Auth., 612 F. Supp.2d 1009, 1024 (N.D. Ind. 2009) (dismissing FHA retaliation claim due to lack of evidence showing plaintiff was engaged in protected activity; plaintiff's filing of a previous lawsuit against the housing authority alleging that it failed to comply with federal rules issued by the United States Department of Housing and Urban Development pertaining to due process hearing rights of tenants but there was "no suggestion" that plaintiff complained about discrimination or tried to enforce any other right that could be construed as protected by the FHA).

To the extent Plaintiff argues that she was protesting discrimination because she told the City Court judge that she "wanted [Defendants] to be responsible for making repairs," Defs' Ex. M at 11, and she believes that Defendants' alleged failure to make repairs was discriminatory, the Court finds this unavailing. As the City Court judge pointed out at the hearing, Defendants had informed that they were willing to make the repairs that she

requested in the marked-up copy of the lease she sent back to them—provided that she signed the lease and agreed to the rent increase, which is what she ultimately agreed to do. Furthermore, as discussed elsewhere in this Decision and Order, there is no evidence that Defendants failed to make any repairs of which they had been made aware. Likewise, there is no evidence that discriminatory intent was behind Defendants' failure to repair the kitchen cabinets and install a peephole. Rather, the evidence establishes that Defendants simply were not aware of these issues because Plaintiff had not notified Defendants about them.

Even assuming that Plaintiff's statements in court during the 2014 eviction proceeding counted as protected activity—which the Court finds not to be the case—Plaintiff cannot show an adverse action by Defendants in response. As noted above, Defendants agreed to extend her lease until October 31, 2015, and to make all of the repairs with which she had annotated her lease agreement.

In sum, Plaintiff cannot make out a _prima_ _facie_ claim of retaliation with regard to either of the allegedly protected activities in which she engaged. Accordingly, dismissal of her retaliation claims as a matter of law is warranted.

## VII. The State Law Claims Fail

Because Plaintiff is _pro_ _se_, the Court liberally construed her First Amended Complaint as raising the State law claims under the NYSHRL, codified at N.Y. Exec. Law § 290 _et_ _seq._, that she

presented in her verified complaint to the NYSDHR. Subject to exceptions not relevant here, the NYSHRL contains provisions prohibiting housing discrimination similar to those in the FHA. See N.Y. Exec. Law § 296(5)(a)(2).[4] Claims under the FHA and N.Y. Exec. Law § 296 are "evaluated under the same framework." Olsen v. Stark Homes, Inc., 759 F.3d 140, 153 (2d Cir. 2014) (citation and quotation marks omitted). As discussed above, Plaintiff's claims under the FHA fail as a matter of law. As the NYSHRL claims are also evaluated under the same McDonnell Douglas framework, they fail as a matter of law for the identical reasons the FHA claims do. Defendants therefore are entitled to summary judgment as to the NYSHRL claims. E.g., Francis v. Kings Park Manor, Inc., 91 F. Supp.3d 420, 434 (E.D.N.Y. 2015); see also Haber v. ASN 50th St. LLC, 847 F. Supp.2d 578, 588 (S.D.N.Y. 2012) (because plaintiff's "discriminatory treatment claims under the FHA fail under the McDonnell Douglas test," the claims under the NYSHRL "must fail as well").

## VIII.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 60) is granted in its entirety, and

---

[4] "It shall be an unlawful discriminatory practice for the owner, . . . or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, . . . or any agent or employee thereof: (2) To discriminate against any person because of race . . . [or] disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith." N.Y. Exec. Law § 296(5)(a)(2).

Plaintiff's Motion for Summary Judgment (Docket No. 63) is denied in its entirety. The First Amended Complaint (Docket No. 33) is dismissed with prejudice. In light of the Court's dismissal of Plaintiff's First Amended Complaint, her Motion for Punitive Damages (Docket No. 54) is denied as moot. The Clerk of Court is directed to close this case.

     **SO ORDERED.**

**s/ Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

DATED:     February 15, 2019
              Rochester, New York